MAR-23-2007  16:39          3539414                    3539414   P.14/17

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SEALED

| | |
|---|---|
| UNITED STATES OF AMERICA | : CRIMINAL NO.: 07-165 |
| v. | : VIOLATION: 18 U.S.C. § 1001 |
| MICHAEL SHARPSTENE, | : (False Statements) |
| Defendant | : |

FILED
SEP 1 4 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### STATEMENT OF THE OFFENSE

1. On or about August 30, 2005, in Washington, D.C., the defendant, Michael Sharpstene, was employed by the United States Marshals Service as a Deputy United States Marshal (DUSM). On the morning of August 30, 2005, DUSM Sharpstene was assigned to the loading dock area of the Superior Court for the District of Columbia located at 500 Indiana Ave., N.W., Washington, D.C. A number of other officers were working in the loading dock area that morning, including DUSM Bryan Behringer and DUSM Stephen Cook.

2. On the morning of August 30, 2005, a Metropolitan Police Department transportation van pulled into the loading dock of the courthouse to drop off several prisoners, including the victim, Omar Hunter. Approximately four other inmates rode in the van with Mr. Hunter. The prisoners were attached to each other with flex-cuffs that were attached to the prisoners' wrists.

3. Once the van entered the loading dock area, DUSM Cook and an MPD officer opened the rear door of the van. Mr. Hunter

13

Case 1:07-cr-00165-ESH   Document 10   Filed 09/14/2007   Page 2 of 4

May-17-07   04:20pm   From-Kinkos #0564 El Paso - Montana   915 781 1624   T-475   P.002/004   F-050
MAR-23-2007   16:39   3539414
3539414   P.15/17

was sitting closest to the rear van door. DUSM Sharpstene heard a brief verbal exchange between DUSM Cook and Mr. Hunter. DUSM Sharpstene then saw DUSM Cook grab Mr. Hunter and saw him throw Mr. Hunter to the ground. Mr. Hunter was still flex-cuffed to the other inmates, who were also pulled out of the van by the force that DUSM Cook had applied to Mr. Hunter. DUSM Sharpstene then heard DUSM Cook curse at Mr. Hunter and saw DUSM Cook kick Mr. Hunter in the facial area at least once. At the time DUSM Sharpstene made these observations, he immediately recognized that the force DUSM Cook had used was excessive and was not in response to any threat posed by Mr. Hunter.

4. Within two weeks of witnessing this incident, DUSM Sharpstene electronically filed a field report with his supervisor regarding the alleged use of force by DUSM Cook. Before completing his field report, he was contacted by DUSM Bryan Behringer, asked what DUSM Behringer included in his report. DUSM Behringer advised DUSM Sharpstene that he had based his report on DUSM Cook's report. DUSM Behringer then communicated to DUSM Sharpstene the basic facts contained in DUSM Cook's report. DUSM Sharpstene then completed his field report. In that report DUSM Sharpstene intentionally omitted the facts that he had observed DUSM Cook throw Mr. Hunter to the ground and that he saw DUSM Cook kick Mr. Hunter in the face.

*WHO NOTIFIED DUSM SHARPSTENE THAT SDUSM RIVERS NEEDED A REPORT,*

14

5. On or about April 28, 2006, DUSM Sharpstene was contacted by members of the FBI regarding the alleged assault on Mr. Hunter. DUSM Sharpstene agreed to provide a voluntary oral statement to members of the FBI regarding this incident. DUSM Sharpstene was advised of the nature of the investigation, including the fact that it was a federal criminal investigation. DUSM Sharpstene was also advised that he was free to terminate the interview at any time. DUSM Sharpstene then knowingly provided a false statement to the FBI. DUSM Sharpstene did not tell the agent either that he saw Mr. Hunter pulled off of the van by DUSM Cook, or that he had seen DUSM Cook kick Mr. Hunter in the facial area. DUSM Sharpstene intentionally omitted this information in order to obstruct the federal investigation into the assault on Mr. Hunter.

6. DUSM Sharpstene hereby acknowledges that his statement to the FBI on or about April 28, 2006, was false; that at the time he made the statement he knew it to be false; that he knew the false statement related to a material fact; that he knew the false statement was made in relation to a matter that was within the jurisdiction of a department or agency of the United States; that he acted wilfully in making the false statement to the FBI; and that in making the statement he intended to interfere with the federal criminal investigation into the assault of Mr. Hunter.

May-17-07  04:20pm  From-Kinkos #0564 El Paso - Montana       915 781 1624        T-475  P.003/004  F-050

MAR-23-2007  16:39           3539414                                      3539414    P.17/17

I HEREBY AFFIRM, UNDER PENALTY OF PERJURY, THAT THE FOREGOING FACTS CONTAINED IN THIS STATEMENT OF THE OFFENSE ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF.

5/17/07

DATE

MICHAEL SHARPSTENE

TOTAL P.17