UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. : CRO7-165-01 (ESH) |
| | : | |
| v. | : | JUDGE ELLEN S. HUVELLE |
| | : | |
| MICHAEL SHARPSTENE | : | Sentencing : April 30, 2008 |
| | : | |
| Defendant. | : | UNDER SEAL |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing. For the reasons stated herein, the government requests that in light of the defendant's cooperation in this matter, the Court impose a sentence of probation.

**Statement of Facts**

1. The evidence at trial established that on August 29, 2005, an officer of the Metropolitan Police Department (MPD) arrested Omar Hunter in Washington, D.C., for failing to have a valid driver's license. This arrest took place without incident. MPD officers transferred Mr. Hunter to the Central Cell Block, again without incident.

2. Shortly thereafter, in the early morning hours of August 30, 2005, MPD officers transferred Mr. Hunter to the sallyport area of the DC Superior Court (DCSC). Prior to transferring Mr. Hunter, MPD officers bound Mr. Hunter's left hand with a "zip cord" that attached him to the arm of Bernard Thornton and several other unidentified prisoners.

3. Upon Mr. Hunter's arrival at the sallyport area of the DCSC, Deputy United States Marshal (DUSM) Stephen Cook entered the police van in which Mr. Hunter was transported and told the occupants of the van to provide their names. DUSM Cook and Mr. Hunter became

involved in a verbal dispute.  DUSM Cook then pulled Mr. Hunter off of the van and struck him repeatedly in the face and upper body with a closed fist.  DUSM Cook also kicked Mr. Hunter in the facial area.  DUSM Cook committed these acts in full view of several other law enforcement officers, including the defendant, DUSM Michael Sharpstene.   Although DUSM Sharpstene recognized that DUSM Cook had used excessive force, he made no attempt to report that use of force to an official.

   4.  Approximately two weeks after this incident, DUSM Sharpstene was asked to provided a field report regarding this incident.  DUSM Sharpstene failed to do so because he did not want to either admit that he had seen DUSM Cook use excessive force, or make a false statement in his field report.  Following a second request, DUSM Michael Sharpstene completed a false report based on information that had been provided to him by DUSM Bryan Behringer.  Because he knew his field report was untrue, DUSM Sharpstene did not sign the report, and electronically submitted his report to his supervisor.

   5.  On April 28, 2006, while the defendant was still assigned to the D.C. Superior Court, DUSM Sharpstene was contacted by members of the FBI regarding the alleged assault on Mr. Hunter.  DUSM Sharpstene then knowingly provided a false statement to the FBI.  DUSM Sharpstene did not state that he saw Mr. Hunter thrown to the ground by DUSM Cook, or that he had seen DUSM Cook kick Mr. Hunter in the facial area.

   6.  In the Summer of 2006, DUSM Sharpstene was again contacted by the FBI after he had been transferred to Glynco, Georgia.  When asked, DUSM Sharpstene indicated that he did not wish to alter his previous statement to the FBI.

7. On or about September 19, 2006, DUSM Behringer contacted DUSM Sharpstene and told him that he had been served with a subpoena to appear before the Grand Jury. During this same conversation, DUSM Behringer advised DUSM Sharpstene that he had decided to cooperate with the FBI.

8. DUSM Sharpstene assumed that he too would be served with a subpoena, and he contacted the FBI and informed them that he wanted to tell the truth about what he had actually seen. DUSM Sharpstene then agreed to cooperate with the government's investigation even though he did not have a plea agreement. DUSM Sharpstene offered to make recorded telephone calls for the FBI, however, for operational reasons, no recorded phone calls were made using DUSM Sharpstene.

9. In November of 2006, without the benefit of a plea agreement, DUSM Sharpstene testified before the grand jury and admitted that he had filed a false report and had initially lied to the FBI. On September 14, 2007, DUSM Sharpstene pled guilty, pursuant to a cooperation agreement, to a single count of violating 18 U.S.C. § 1001.

10. DUSM Sharpstene cooperated fully during preparation for trial. As this Court knows, DUSM Sharpstene also offered valuable testimony for the government during the trial of DUSM Stephen Cook.

## Statutory Penalties

11. Pursuant to 18 U.S.C. § 1001, the defendant faces a maximum sentence of 5 years of imprisonment for making a false statement to the United States. On this count the defendant also faces a fine of $250,000.00, and a term of supervised release of no more than 3 years. In

addition, the defendant must pay a special assessment fee of $100.00 per felony conviction to the Clerk of the Court for the District of Columbia.

## Applicability of the Sentencing Guidelines

12. In light of the Supreme Court's decision in United States v. Gall, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007), this Court should consider all of the applicable factors set forth in 18 U.S.C. § 3553(a) after determining the applicable advisory guideline range. These applicable factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense; to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); and the need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6)).

13. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). Thus, the Court invalidated the statutory provision that made the Guidelines mandatory. 18 U.S.C. § 3553(b)(1); Booker, 125 S. Ct. at 756. Nonetheless, and as the Supreme Court recently stated, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.

See United States v. Gall, _____ U.S. _____, 2007 WL 4292116, at *7 (December 10, 2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.").

14. The Guidelines are the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. See United States v. Rita, ___ U.S. ___, 127 S.Ct. 2456 (2007). See also United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. § 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another all important variations that commonly may be expected in criminal cases"). Moreover, the Sentencing Commission has continued to study district court and appellate sentencing decisions in order to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766-67 (the Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly.").

15. The Guidelines are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). Any Guidelines calculation is based on the individual characteristics of the offense and the offender, as required by §3553(a)(1). Thus, the Guidelines seek to fairly and consistently implement the offense-specific characteristics that comprise the "individualized assessment" that the Supreme Court commends in Gall. See Gall, at * 7.

## Sentencing Guidelines

16. Generally, pursuant to U.S.S.G. §2B1.1(a)(2), the base offense level for a violation of 18 U.S.C. § 1001(a)(2) is 6. Pursuant to U.S.S.G. §2B1.1(c)(3), however, if the defendant's conduct set forth in the count of conviction establishes an offense, in this case obstruction of justice, specifically covered by another guideline in Chapter Two, the other guideline should be used by the Court. The presentence report utilized §2B1.1(c)(3) and applied the guideline for obstruction of justice, resulting in a base offense level of 14 pursuant to U.S.S.G. §2J1.2(a). The Presentence Report deducted 2 points for acceptance of responsibility pursuant to U.S.S.G. §3E1.1(a), with a resulting adjusted base offense level of 12, and a guideline range of 10-16 months.

17. Although this jurisdiction has not directly addressed the interplay between U.S.S.G. §§ 2B1.1(c)(3) and 2J1.2(a), other jurisdictions have declined to increase a defendant's base offense level pursuant to §2B1.1(c)(3) if the conduct established in the count of conviction does not satisfy all of the elements of the greater charge, such as obstruction of justice. United States v. Bah, 439 F.3d 423 (8th Cir. 2006); United States v. Genao, 343 F.3d 578 (2nd Cir. 2003); United States v. Rodriguez, 493 F.Supp.2d 833 (W.D. Texas 2007). In this case, the conduct set forth in the Information and the Statement of Facts accompanying the plea agreement on their face would be insufficient to sustain a count related to obstruction of justice pursuant to 18 U.S.C. §1512(c)(2) because they do not contain evidence of the requisite specific intent. The Court need not, however, resolve this issue in this case because the government is seeking a downward departure pursuant U.S.S.G. 5K1.1.

18. In light of the defendant's substantial assistance in this case, the government, assuming a base offense level of 12, is requesting a downward departure of an additional 4 levels, for an

adjusted base offense level of 8, with a resulting guideline range of 0-6 months in Zone A. This is the same guideline range the defendant would face if the court did not apply the cross reference section of U.S.S.G. 2B1.1(c)(3).

### Sentencing Recommendation

19. The government recommends that the Court sentence the defendant within the advisory guideline range to a period of probation. The government notes that defendant has already suffered significant consequences as a result of his guilty plea in this case. The defendant was required to resign from the United States Marshals Service, and his career as a law enforcement officer has ceased to exist. During trial, the defendant also had to deal with the strain of testifying against a fellow law enforcement officer, in a courtroom containing at least one dozen other fellow law enforcement officers. The court may recall that during trial, DUSM Sharpstene noted that this incident had "destroyed his life." Despite this experience, the defendant has sought and obtained full time employment, and there is very little risk of recidivism. The government also notes that during its investigation into this matter, that the government did not identify any other allegations related to veracity, or the use of excessive force, that involve DUSM Sharpstene.

WHEREFORE, the United States respectfully recommends a sentence of probation in this matter.

        Respectfully submitted,

        JEFFREY A. TAYLOR
        United States Attorney
        Bar No. 498610

By:

        John Cummings
        Assistant United States Attorney
        Member Maryland Bar
        555 4th Street, N.W., Room 4838
        Washington, DC 20530
        (202) 514-7561
        john.cummings@usdoj.gov

## CERTIFICATE OF SERVICE

 I HEREBY CERTIFY that on this 28th day of April, 2008, a copy of the Government's Memorandum in Aid of Sentencing was sent via electronic mail and first class mail, postage prepaid, to counsel for Defendant Michael Sharpstene, David Schertler, Esq., Schertler & Onorato, LLP, 601 Pennsylvania Ave., N.W., North Building - 9th Floor, Washington, D.C. 20004-2601.

        John Cummings